# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UMAR BETHEA, a minor child, : | |
| by and through his mother, KIMBERLY : | Civil Action No. 1:CV-04-1149 |
| M. DAVIS, and KIMBERLY M. DAVIS, : | |
| : | |
| **Plaintiffs** : | Judge Kane |
| : | |
| v. : | |
| : | |
| **CENTRAL DAUPHIN SCHOOL** : | |
| **DISTRICT, et al.,** : | |
| : | |
| **Defendants** : | |

## MEMORANDUM AND ORDER

THE BACKGROUND TO THIS ORDER IS AS FOLLOWS:

On May 24, 2004, Kimberly Davis, represented by counsel, filed a complaint on behalf of herself and her son, Umar Bethea, alleging that Central Dauphin School District and a number the District's Board members and employees violated the Plaintiffs' civil rights. (Doc. No. 1.) Generally, Plaintiff Davis alleged that her son had been subjected to racial slurs and disparate treatment on the basis of his race from kindergarten until his eventual expulsion from Dauphin County Technical School in 2004. Plaintiffs also claim that their procedural and substantive due process rights were violated in connection with the District's decision to suspend Mr. Bethea for drug use and assault of another student while on a school bus. Ms. Davis also generally alleged that Defendants have discriminated against her on the basis of her race and religion, and have violated her First Amendment rights by "barring her from school property" and subjecting Mr. Bethea to "retaliatory disciplinary actions, and harassment" after she protested what she believed to be Defendants' "discriminatory and otherwise

unlawful treatment." (Compl. ¶ 96.) Plaintiff Davis also alleged that Defendants violated her "substantive due process parental right to a full and equal public education for her son in violation of 42 U.S.C. § 1983." (Id. ¶ 100.) Plaintiff Davis generally averred that her substantive and procedural due process rights were violated, and that Defendants's actions were "undertaken pursuant to an illicit plan and agreement between and among them" thereby violating 42 U.S.C. §§ 1983, 1985(3), and 1986.

Defendants subsequently filed a joint motion to dismiss the complaint in its entirety, as well as a motion to strike and a motion for a more definite statement. (Doc. Nos. 5, 6, and 7.) The motions were fully briefed, and the Court scheduled oral argument on the motion to dismiss for January 28, 2005.

On November 30, 2004, Plaintiffs submitted an amended complaint, which contained factual allegations substantially similar to those set forth in the original complaint. (Doc. No. 32.) Defendants again moved jointly to dismiss the amended complaint, and alternatively moved to strike or requested a more definite statement. (Doc. Nos. 35, 36, and 37.) Pursuant to Defendants' request, the previously scheduled oral argument on the pending motions was continued until February 15, 2005.

Subsequent to oral argument, the Court became aware the Plaintiffs' original counsel, Andrew Ostrowski, had unexpectedly been forced to discontinue his legal practice due to the onset of a medical emergency. On June 8, 2005, attorney Sherri Coover, an attorney with Bailey & Ostrowski, entered an appearance on behalf of Plaintiffs. (Doc. No. 51.) Through Attorney Coover, Plaintiffs moved to extend the June 8, 2005 discovery cutoff. (Doc. No. 52.) Defendants opposed extending discovery, and on June 29, 2005, the Court convened a telephone conference to discuss the status of the litigation and Plaintiffs' request to extend discovery deadlines.

During the June 29 telephone conference, Attorney Don Bailey of Bailey & Ostrowski advised the Court that Plaintiff Davis had been seeking replacement counsel since April 2005, and she did not wish for the Bailey & Ostrowski firm to continue representing her and her son in this action. Attorneys Bailey and Coover had sought to hold discovery open in order to protect Plaintiffs' interests while she engaged replacement counsel. The Court agreed to suspend the action for a period of 30 days while Plaintiff Davis found new representation. On July 8, 2005, the Court entered an Order scheduling a telephone conference for August 4, 2005, and directed Plaintiff Davis to participate in the conference call either through replacement counsel or, if counsel had not been obtained, on a pro se basis.

As of August 4, 2005, Plaintiff Davis had been unable to find a lawyer willing to undertake representation of her and Mr. Bethea in this action. Plaintiff Davis participated in the telephone conference and indicated that she continued to seek new counsel and wished to engage in settlement discussions with Defendants. Defendants suggested that such settlement talks would be better facilitated if Plaintiffs were represented. On August 5, 2005, the Court entered an Order allowing Bailey & Ostrowski to withdraw and granted Plaintiff Davis an additional ten days in which to engage replacement counsel. (Doc. No. 64.) In the event Plaintiffs were able to secure new representation, the Court would hold the action open for 30 days to allow the parties to engage in settlement negotiations. However, the Court advised Plaintiff Davis that if she had not found new counsel, the Court would proceed to consider the pending motions to dismiss the amended complaint. (Id.)

By letter dated August 17, 2005, Plaintiff Davis advised the Court that she had been unable to find a new lawyer to represent her and Mr. Bethea in the litigation. (Doc. No. 66.) Ms. Davis requested that the Court hold the case in abeyance "for an extended period of time" to allow her to

3

continue her search for a new lawyer. (Id.)  Alternatively, Ms. Davis asked that if the Court were constrained to rule upon the pending motions to dismiss, that it do so without prejudice in order that she might refile the complaint at such time as she secured new counsel. (Id.)

The Court is sensitive to Plaintiff Davis's current status as an uncounseled litigant in this action. However, that sensitivity must be balanced against the legitimate interests of, and expense incurred by, the many Defendants to an action that has now been pending for more than 15 months with little progress.[1]  The Court finds that Plaintiff Davis has been afforded an adequate opportunity to find suitable replacement counsel and, to date, has been unable to find a lawyer willing to take this case. Accordingly, the Court is now constrained to consider the merits of the pending and fully briefed motions to dismiss with respect to Ms. Davis's claims.  However, for the reasons discussed below, the Court will dismiss Plaintiff Bethea's claims without prejudice.

## II. Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  When considering a motion to dismiss, the court accepts as true all factual allegations contained in the complaint and views them in the light most favorable to the plaintiff.  U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  The plaintiff is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."  Kost, 1 F.3d at 183 (citations omitted).  A court should grant a motion to dismiss only if it appears the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

---

[1]  For example, the Court has been advised that Plaintiffs have taken no discovery of any kind in this action.  Fact discovery closed on June 8, 2005.

Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985) (citations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Lake v. Arnold, 112 F.3d 682, 688 (3d Cir. 1997) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

**II.   Plaintiff Bethea's Claims**

Plaintiff Davis, a pro se litigant, is not entitled to represent her son in place of an attorney in federal litigation. See Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 882-83 (3d Cir. 1991). In a recent unpublished decision, the United States Court of Appeals for the Third Circuit vacated a district court's order granting summary judgment in favor of a school district where plaintiff-mother improperly represented herself and her minor son in the litigation after their attorney withdrew. Harris-Thomas v. Christina Sch. Dist., No. 04-1184, 2005 U.S. App. LEXIS 14152 (3d Cir. July 12, 2005). The Third Circuit vacated the grant of summary judgment against the minor plaintiff and suggested, inter alia, that

the district court on remand may wish to dismiss the minor plaintiff's claims without prejudice. Id. at *3.

Given the tortured procedural history of this action, the fact that Plaintiff Bethea became uncounseled due to his attorney's unexpected illness, and has at no time appeared before or advised the Court of his wishes with respect to this litigation, the Court finds that it would be unfair to enter judgment on Plaintiff's claims in this case. Accordingly, the Court will enter an order dismissing Plaintiff's claims without prejudice.

## III. Plaintiff Davis's Claims

Plaintiff Davis is permitted to represent her own interests in federal court. See 28 U.S.C. § 1654 (2005). See also Osei-Afriyie, 937 F.2d at 882 (citation omitted). After her attorney withdrew, and after he had filed briefs in opposition to the pending motion to dismiss, Plaintiff Davis was afforded a considerable amount of time to retain new counsel to assist her in this action. As noted, she has been unable to find another lawyer willing to take her case, and has not sought the Defendants' concurrence to have this action dismissed without prejudice. In the absence of such concurrence, the Court finds it must now consider the merits of the pending motion with respect to Plaintiff Davis's claims.

### A. Counts X-XIII

Courts have found that parents do not have a cognizable constitutional interest in their children's education. See Brian A. v. Stroudsberg Area Sch. Dist., 141 F. Supp. 2d 502, 507 (M.D. Pa. 2001); Collins v. Chichester Area Sch. Dist., 1998 U.S. Dist. LEXIS 9651, at *19 (E.D. Pa. 1998) ("The right to a free public education is a right which belongs to the student and not their parents"). See also Jarmon v. Batory, 1994 U.S. Dist. LEXIS 8902, *15-16 (E.D. Pa. June 29, 1994) ("When a student

is suspended or expelled, it is the student who is entitled to due process, because it is the student – not [her] parents – who has a right to a free public education") (internal quotation and citation omitted).  A fair reading of the complaint, taken in the light most favorable to Plaintiff Davis, establishes that nearly all of her claims are integrally related to, and predicated upon, Plaintiff Bethea's underlying claims that Defendants violated his civil and due process rights with respect to a free public education.

For example, in Count X of the amended complaint, Plaintiff Davis asserts that "the conduct of Defendants, as alleged herein, was arbitrary, capricious, reckless, and/or outrageous, and served no legitimate purpose, and has deprived Plaintiff of her Fourteenth Amendment substantive due process parental right to a full and equal public education for her son . . . ."  (Doc. No. 32, Am. Compl. ¶ 115.)  As such, Plaintiff Davis is attempting to assert that her own constitutional rights were violated through Defendants' alleged infringement of her son's right to a free public education.  As such, the Court finds the claims in Count X are not cognizable and must be dismissed.

In Count XI, Plaintiff alleges that Defendants "deprived Plaintiff of her rights under the Fourth and Fourteenth Amendments" as a result of what she describes as "malicious prosecution and abuse of process."  (Id. ¶ 119.)  The only arguable claims of malicious prosecution and abuse of process that Plaintiffs articulate are those relating to Mr. Bethea's numerous suspensions, and his eventual expulsion.  Plaintiff Davis simply cannot make out a cognizable Fourth or Fourteenth Amendment violation of her own rights relating to the disciplinary action taken against Mr. Bethea relating exclusively to his right to a public education, nor the process afforded him in connection with his suspension hearings.

In Count XII, Plaintiff alleges generally that "Defendants['] actions and conduct . . . deprived Plaintiff of her procedural due process rights under the Fourteenth Amendment . . . and has persisted to

such a degree so as to constitute a substantive due process deprivation as well." (Id. ¶ 123.) The Court has difficulty comprehending exactly what "actions and conduct" of Defendants Plaintiff is alleging violated her own procedural due process rights, but it is clear from the amended complaint that the only process complained of in the amended complaint is the process surrounding Mr. Bethea's suspension and disciplinary hearings. As such, the procedural due process rights at issue are those of Mr. Bethea, not his mother. Accordingly, Count XII must be dismissed for failure to state a claim.

In Count XIII, Plaintiff alleges, with no specificity, that "some or all" of the Defendants were engaged in a conspiracy, which directly and proximately had the effect of "the loss of education and educational opportunities for [Plaintiff Bethea]" causing Plaintiff Davis to suffer humiliation and embarrassment. (Id. ¶¶ 127-128.) Although the allegation is especially vague, it appears that Plaintiff is alleging that an "illicit plan and agreement" among "some or all" of the Defendants compromised her son's right to a free public education. (Id. ¶ 127) Like the counts discussed above, Count XIII must be dismissed because Plaintiff Davis does not have a cause of action for a conspiracy that was allegedly designed to, or had the effect of, impairing her son's education rights. Setting aside that the amended complaint is lacking in specific allegations of conspiracy, the fact remains that the right to challenge such a conspiracy is Mr. Bethea's, not his mother's. Accordingly, Count XIII must also be dismissed.

    B.    Count VIII

In Count VIII of the amended complaint, Plaintiff Davis alleges that "Defendants intentionally discriminated against and knowingly subjected Plaintiff. . . based upon her race and religious affiliation, and have abridged her rights to the equal privileges and benefits of the laws, all in violation of 42 U.S.C. §§ 1981, 1983 and 2000d, et seq." (Id. ¶ 107.) Like many of the other counts, the allegations

contained in Count VIII lack detail.  Nevertheless, it is clear that the principal injury Ms. Davis claims as the result of this alleged intentional discrimination is again "the loss of education and educational opportunities for [Plaintiff Davis's] son."  (Id. ¶ 108.)  Additionally, Ms. Davis alleges humiliation and emotional upset as a result of the claimed racial discrimination.  (Id. ¶ 108.)

Examining only those allegations of conduct directed specifically at her, Plaintiff Davis claims that in October 2004, Central Dauphin High School Principal Richard Mazzatesta had the Lower Paxton Township police remove Ms. Davis from school premises after she refused the school's request that she schedule an appointment if she desired to visit the school buildings or her son's classes.  (Id. ¶¶ 37-39.)  Plaintiff Davis also alleges that Principal Mazzatesta "imposed a ban" on her and advised Ms. Davis that "he would protect his staff and property by 'any means necessary'."  (Id. ¶ 40.)  At some unspecified point, Ms. Davis claims Mr. Mazzatesta referred to her as "the Rosa Parks of the Central Dauphin School District."  (Id. ¶ 41.)  Additionally, Ms. Davis alleges that on May 9, 2003, she received a notice that she was in violation of the compulsory school law, and that the affiant of the complaint was the Central Dauphin School District.  (Id. ¶ 55.)

Upon careful review of the amended complaint, it is clear to the Court that all of Ms. Davis's remaining factual allegations relate to what she believes was a racially hostile environment that was permitted to exist within the school district, or complaints about the process that the school district afforded to her son following his apparently frequent disciplinary incidents.  Although the Court appreciates Ms. Davis's genuine concern regarding what she perceived as a racially insensitive school district, and with what she considered to be disregard of her manifest interest in her son's education and development, the Court cannot find that Plaintiff Davis has stated a cognizable claim that her own civil

rights were violated. Assuming as true that one of the Defendants compared her to a known civil rights figure, or used disrespectful or vulgar language in dealing with Ms. Davis, or served her with notice that she was in violation of the compulsory school law, these allegations simply do not amount to a cognizable civil rights violation because none of Plaintiff Davis's own civil rights were compromised or infringed in any way. At most, Ms. Davis has alleged racial insensitivity or incivility on the part of certain Defendants, but has not articulated how her own civil rights under the law were violated. Furthermore, as discussed above, Ms. Davis cannot predicate her own civil rights claims on allegations that her son's educational rights were abridged or otherwise impaired. Because she has failed to set forth sufficient allegations regarding her own civil rights claims, Count VIII of the amended complaint must be dismissed.

        **C.**       **Count IX**

In Count IX, Plaintiff Davis alleges that "Defendants intentionally discriminated against and knowingly violated Plaintiff Davis' rights under the First Amendment by barring her from school property and subjecting her son to retaliatory disciplinary actions, and harassment, after she protested their discriminatory and otherwise unlawful treatment." (Id. ¶ 111.) Read liberally, it appears Ms. Davis is arguing that her action of filing two claims with the Pennsylvania Human Relations Commission caused Defendants to retaliate against her son with disciplinary action. Additionally, Ms. Davis claims that the Principal Mazzatesta's alleged order barring her from school property constitutes retaliation for her speech activity. Upon considering the allegations set forth in the amended complaint, the Court finds that Plaintiff Davis has failed to plead a First Amendment retaliation claim.

As an initial matter, the Court questions whether Plaintiff can articulate a cognizable claim for

First Amendment retaliation where the alleged retaliation is discipline imposed upon her son.  The Court acknowledges that in certain limited contexts, courts have found that a family member had a First Amendment claim for "intimate association" where a husband was subjected to an adverse employment action in retaliation for speech conduct on the part of his wife.  See Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999).  Whatever may be the contours of this limited right and theory of liability under the First Amendment, and whether it may in certain contexts extend to a parental-child relationship, the amended complaint does not even allege that such a right was violated.  Moreover, with respect to the disciplinary action taken against her son, the Court notes that neither Plaintiff Davis nor Plaintiff Bethea has denied the conduct that ultimately formed the basis for his suspension: namely, consuming hallucinogenic drugs and pouring his own urine over another student while riding on a school bus.  The Court finds that Plaintiff Davis has failed to plead a valid cause of action that her own First Amendment rights were violated on the basis that her son was subjected to retaliation for her own First Amendment activity.

The Court finds equally unavailing Plaintiff's claim that being barred from school property constitutes retaliation for engaging in protected speech activity.  It is obvious from the allegations in the amended complaint that Plaintiff Davis is not claiming that her speech activity of filing complaints with the Pennsylvania Human Relations Commission gave rise to the allegedly retaliatory decision to bar her from school property.  This is so because Plaintiff Davis claims that she filed complaints with the PHRC after her alleged confrontation with Principal Mazzatesta and other school officials that led to her being removed from school premises.  (Id. ¶¶ 42, 57.)  Thus, it is not altogether clear what protest regarding Defendants' "discriminatory and otherwise unlawful treatment" Plaintiff Davis is claiming forms the basis

11

for her retaliation claim. Reading the amended complaint liberally, the Court can only conclude that Ms. Davis is contending that her confrontation with school officials on October 28, 2002 qualified as protected speech activity, and that the resultant decision to bar her from school premises constituted retaliation. The Court finds that none of the allegations surrounding this incident could conceivably be considered protected speech activity. Plaintiff Davis alleged only that she requested a meeting with a building administrator, which was denied because no administrators were available. Plaintiff Davis then stated that she wanted to visit the school building and her son's classes, and was advised that she needed an appointment prior to such a visit. Plaintiff was asked to leave the school premises, and when she refused, she was escorted off the premises by Lower Paxton Township police officers. Nothing in these allegations remotely suggests that Plaintiff Davis was engaged in protected speech activity in connection with this incident, nor that the decision to bar her from school property could be reasonably interpreted as retaliation for speaking out on an issue of public concern. For all of these reasons, the Court finds Plaintiff has failed to plead a claim of First Amendment retaliation and Count IX must be dismissed.

    **D.**    **Count XIV**

Finally, in Count XIV, Plaintiff Davis alleges that the "actions and conduct of the Defendants . . . also constitute abuse of process/wrongful use of proceedings and the intentional infliction of emotional violations [sic] in violation of Plaintiff's rights under Pennsylvania state law." (Id. ¶ 131.) There are no specific allegations as to what "actions and conduct" are said to constitute "abuse of process/wrongful use of proceedings," nor does Plaintiff explain what "Pennsylvania state law" has allegedly been violated. Even reading the allegation liberally within the context of the amended complaint, the Court

finds it is so vague that it fails to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

In order to state a claim for abuse of process under Pennsylvania law, a plaintiff must establish: (1) an abuse or perversion of process already initiated; (2) with some unlawful or ulterior purpose; and (3) harm to the plaintiff as a result. See Kedra v. Nazareth Hosp., 868 F. Supp. 737, 738 (E.D. Pa. 1994) (citing Shaffer v. Stewart, 473 A.2d 1017, 1019 (Pa. Super. 1984)). This requires that the plaintiff offer some proof of a "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." William v. Fender, 69 F. Supp. 2d 649, 673 (M.D. Pa. 1999); see also Jennings v. Shuman, 567 F.2d 1213, 1219 (3d Cir. 1977).

The only process Defendants arguably initiated against Plaintiff Davis was issuing a notice to appear for violation of Pennsylvania's compulsory school law.  The amended complaint does not allege that there was an unlawful or ulterior purpose in the issuance of the notice, nor that Plaintiff Davis suffered any particular harm as the result of being served with the notice.  Thus, the allegations relating to this legal process do not support a claim for abuse of process.

To the extent that this claim relates to the process surrounding Mr. Bethea's suspension hearings and related disciplinary proceedings, the Court finds that any injury relating to such process rests with Mr. Bethea; the Court cannot find that Plaintiff Davis has standing to assert this claim because any alleged injury emanating from the suspension and due process hearings was incurred by Mr. Bethea, who was the focus of the disciplinary proceedings.

Plaintiff Davis's claim of intentional infliction of emotional distress also must be dismissed.  The United States Court of Appeals for the Third Circuit, applying Pennsylvania law, has explained the

13

showing necessary to support a claim of intentional infliction of emotional distress as follows:

> The gravamen of the tort of intentional infliction of emotional distress is that the conduct complained of must be of an "extreme and outrageous type." As a preliminary matter, it is for the court to determine if the defendant's conduct is so extreme as to permit recovery. Pennsylvania courts have been chary to declare conduct "outrageous" so as to permit recovery for intentional infliction of emotional distress and have allowed recovery "only in limited circumstances where the conduct has been clearly outrageous." It has been said that "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."

Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (internal citations and footnotes omitted). The complaint's allegations of conduct directed at Plaintiff Davis are especially limited and frequently vague. Without minimizing Plaintiff Davis's feelings regarding her son's alleged experiences throughout his young life within the Central Dauphin School District, the Court is unable to find that the allegations give rise to a claim for intentional infliction of emotional distress on the part of Ms. Davis. Aside from allegations of limited and infrequent offensive conduct on the part of some Defendants directed specifically at Ms. Davis, the entire amended complaint concerns allegations of conduct taken towards Mr. Bethea, not his mother. A cognizable tort claim for intentional infliction of emotional distress is quite rare, and must be predicated upon outrageous conduct that is extreme in degree. The

14

amended complaint is simply lacking in allegations of sufficiently outrageous and extreme conduct on the part of Defendants necessary to support a claim for intentional infliction of emotional distress. Accordingly, this claim must also be dismissed. An appropriate order follows.

**IV.    Order**

And now, this 15th day of September 2005, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendants' Joint Motion to Dismiss (Doc. No. 35) is **GRANTED** as follows:

1. Plaintiff Umar Bethea's claims contained in Counts I - VII are **DISMISSED** without prejudice.

2. Plaintiff Kimberly Davis's claims contained in Counts VIII - XIV are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED THAT** the following pending motions are **DENIED** as moot:

1. Defendants' Joint Motion to Strike (Doc. No. 36);

2. Defendants' Joint Motion for a More Definite Statement (Doc. No. 37);

3. Plaintiffs' Motion to Complete Discovery (Doc. No. 52);

4. Defendants' Joint Motion for Summary Judgment (Doc. No. 54); and

5. Defendants' Unopposed Motion for Extension of Time (Doc. No. 57).

The Clerk of Court is directed to close the file.


    S/ Yvette Kane
Yvette Kane
United States District Judge